UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SPADARO, | NO. CV 09-4549-CT |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

On July 8, 2009, plaintiff, Robert Spadaro ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties consented to proceed before the magistrate judge. On October 16, 2009, plaintiff filed a brief with points and authorities. On November 13, 2009, the Commissioner filed a brief with points and

authorities in opposition to remand or reversal.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1. Proceedings

On November 28, 2005, plaintiff filed an application for disability insurance benefits, alleging disability since March 25, 2002 due to a lower back injury. (TR 95-99, 115-16.)[1] The application was denied initially and upon reconsideration. (TR 54-57, 58-62.)

On February 5, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 63.) On July 16, 2008, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 20-40.) The ALJ also considered medical expert ("ME") (TR 40-47) and vocational expert ("VE") (TR 47-51) testimony.

On January 15, 2009, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he remains able to perform a limited range of light work and, thus, was not eligible for benefits. (TR 9-17.) On January 30, 2009, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 5.) On April 22, 2009, the request was denied. (TR 1-3.) Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

### 2. Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

//

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

## PLAINTIFF'S CONTENTIONS

Plaintiff contends the ALJ failed to:

1. Consider the lay witness' statements;
2. Properly consider the state agency's opinion;
3. Properly consider the severity of plaintiff's mental impairment; and,
4. Pose a complete hypothetical question to the vocational expert.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

## DISCUSSION

### 1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d) (1) (A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 404.1520; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

//
//
//

2. Issues

A. Lay Witness Testimony

Plaintiff first contends the ALJ "ignored" a third-party function report submitted by plaintiff's daughter. The record belies this contention, however. In fact, the ALJ specifically "considered the lay evidence submitted by the [plaintiff's] daughter," and, moreover, found that her statements to the effect that plaintiff is limited in terms of his ability to bend and stoop were credible to a significant degree. (See TR 12-13, 15.) The ALJ declined to credit the daughter's statements in their entirety, however, to the extent they conflict with plaintiff's assessment of his own functional limitations:

> [T]o the extent that the [plaintiff] would have greater functional restrictions than as assessed herein, those statements conflict with the evidence as to plaintiff's stated functional capabilities.

(TR 15.)

The ALJ is entitled to reject lay witness testimony if she provides reasons germane to that witness for so doing. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(citations omitted). Germane reasons may include, for example, that the witness's testimony is inconsistent with the medical evidence of record or the plaintiff's self-reporting. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Because the ALJ met this standard, and substantial evidence of record supports this conclusion, (TR 15, 132-34, 146-53, 198), there is no material legal error here.

B. Reviewing Physicians (Issue # 2)

Next, plaintiff claims the ALJ erred in understating the conclusions of two state agency reviewing psychiatrists as finding

plaintiff has "mild" limitations in his ability to sustain concentration, persistence, and pace. (See TR 12.) This contention, too, is belied by the record: both assessed plaintiff as having only "mild" limitation in this regard. (See TR 425, 453.)

They did, as plaintiff points out, find that plaintiff has a "moderate" limitation in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (TR 412, 456-57.) These findings conflict, however, with the conclusion of the consultative examiner, ("CE"), who found plaintiff would have only "mild" limitations completing a normal workweek without interruption. (See TR 408.) And the ALJ is required to adopt the findings of the examining psychiatrist over those of reviewing psychiatrists, absent a significant and legitimate reason for doing so. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). No such reasons are present here, particularly given that the reviewing psychiatrists based their evaluations entirely upon the CE's report and not upon other evidence not considered by the CE. (See TR 413, 418, 457.)

Consequently, there is no material legal error here.

C. Mental Impairment (Issue # 3)

Plaintiff next contends the ALJ erred by failing to find his depression to be "severe" under the Act because she failed to adequately account for the mental limitations referred to in the prior section and for a "mild to moderate" limitation in the ability to handle work stress opined by the CE, Ernest Bagner III, M.D..

A mental impairment, such as depression, may constitute a

disability within the meaning of the Act. See Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477-78 (9th Cir. 1989). The mere presence of a mental impairment does not establish entitlement to benefits, however. In order for plaintiff to recover benefits, the evidence must establish that the impairment is accompanied by a physiological or functional loss establishing an inability to engage in substantial gainful activity. Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477-78 (9th Cir. 1989). If a mental impairment causes only *mild* limitations in the plaintiff's daily living activities, social functioning, and, ability to maintain concentration, persistence, or pace, and has not caused any episodes of decompensation of extended duration, then a mental impairment will not be considered "severe" under the Act. 20 C.F.R. § 404.1520a (d)(1).

Substantial evidence of record supports the ALJ's conclusion that plaintiff's alleged mental impairment is not "severe."

Plaintiff did not seek benefits due to mental impairment. (See TR 115-16.) He has not undergone psychiatric treatment; the consultative examiner's report is the only psychiatric evaluation of record. (TR 406-08.) The CE, Dr. Bagner, opined that, were plaintiff to receive anti-depressant treatment, even his *de minimis* mental limitations would significantly improve in less than six months. (TR 407-08.) Furthermore, even without his having received treatment, Dr. Bagner assessed plaintiff with a relatively high global assessment of functioning ("GAF") score of 73. The GAF score is a "rough estimate" of an individual's psychological, social, and occupational functioning that is used to reflect the individual's need for treatment. (See American Psychiatric Association, American Psychiatric Association, Diagnostic

and Statistical Manual of Mental Disorders p. 20 (4th ed. 1994 (DSM-IV) (emphasis in original)). A GAF score of between 71 and 80 indicates that "[i]f symptoms are present, **they are transient and expectable reactions to psychosocial stressors** (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." Id. at 32 (emphasis added). Indeed, the CE ultimately concluded that "the appropriate professional would best address any restrictions based strictly on medical findings." (TR 408.)

In any event, even assuming, which the court does not, that plaintiff's mental impairment were "severe," it would not be "disabling" under the Act and, accordingly, any error in this regard is harmless. First, plaintiff's mental impairment cannot be deemed *per se* disabling under the Act when, as is the case here, it can be controlled by treatment or medication. See 20 C.F.R. § 404.1530 (a) (providing that social security plaintiff must follow prescribed treatment if it can restore the ability to work).[2]

Moreover, the VE testified that all of the jobs proposed for plaintiff are appropriate for a person limited to unskilled work, and simple, repetitive tasks and, accordingly, they do not exceed the mental functioning limitations plaintiff proposes. (See TR 16, 49.) See

---

[2] Nor can a mental impairment be deemed disabling when drug addiction is a "contributing factor material to the determination of disability," that is, when plaintiff would no longer be disabled if plaintiff stopped using drugs or alcohol. Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998). Here, plaintiff has a history of heroine addiction until 2005, and currently is maintained on methadone. (TR 12.) Thus, the record suggests drug addiction may be a contributing factor with regard to plaintiff's mental impairment.

Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (to the extent a plaintiff is limited in concentration, attention, or pace, the RFC for "simple, routine, entry-level work" and unskilled work adequately encompasses these types of limitations.)

There is no material legal error here.

### D. Vocational Expert Hypothetical (Issue # 4)

Finally, plaintiff contends the decision is erroneous because the ALJ did not include the opined "moderate" mental limitations, discussed above, within the VE hypothetical.

As was discussed above, however, the ALJ articulated legally sufficient reasons for finding that any mental limitations plaintiff suffers from are mild and would have no more than minimal impact on his ability to perform basic mental work activities. (TR 12.) An ALJ may properly exclude from the hypothetical any mental limitations that have been found to be "mild" and present "no significant interference" with work abilities. See Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577 (9th Cir. 1988) (existence of minor non-exertional, e.g., mental, impairment precludes use of Medical-Vocational Guidelines only if it will "significantly limit" plaintiff's work abilities).

In any event, as was also discussed above, any error here would be harmless because the jobs proposed by the VE are appropriate for someone with mental functioning limitations plaintiff proposes.

Consequently, there is no material legal error here.

### CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. Flaten v. Sec'y of Health

and Human Servs., 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 11/24/09

/s/ Carolyn Turchin
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Robert A. Spadaro | Period of Disability and Disability Insurance Benefits |
| (Claimant) | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On November 28, 2005, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 25, 2002. The claim was denied initially and upon reconsideration. Thereafter, the claimant filed a timely written request for hearing on February 14, 2007 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on January 16, 2008, in Orange, CA. Also testifying were Joseph Jensen, M.D., an impartial medical expert and Stephen Berry, an impartial vocational expert. The claimant is represented by Bill LaTour, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2007 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant was not under a disability within the meaning of the Social Security Act from March 25, 2002 through the date last insured.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is



See Next Page

9

Robert A. Spadaro █████████  Page 2 of 9

disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long

**10**

Robert A. Spadaro ███████████                                      Page 3 of 9

enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1. **The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.**

2. **The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 25, 2002 through his date last insured of June 30, 2007 (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

3. **Through the date last insured, the claimant had chronic low back pain without radicular pain, L4-5 disc herniation and grade I spondylolysis which resulted in more than minimal limitations on his ability to perform work related tasks and as a result, were considered to be severe within the meaning of the regulations (20 CFR 404.1520(c)).**

The claimant reported a history of hepatitis C (Ex 1F pg 12). However, there is no indication in the record to show that this medical disorder either caused, or was expected to cause, any significant functional limitations. Therefore, the undersigned finds that it does not meet the criteria for a severe impairment.

The claimant has also reported having depression with associated complaints of a lack of sleep, nervousness, feelings of helplessness and hopelessness, difficulty with concentration, and panic attacks (Ex 7F pg 1). Following a consultative psychiatric examination on April 26, 2006, Ernest Bagner, M.D., diagnosed a depressive disorder not otherwise specified, but opined the claimant had no limitations interacting with supervisors, peers or the public; that he had no more than mild limitations in completing tasks, both simple and complex and in maintaining concentration and attention; and that he had mild to moderate limitations in terms of handling normal work stresses. Dr. Bagner noted that the claimant was not receiving any psychiatric treatment, and

**11**

Robert A. Spadaro   Page 4 of 9

opined if he were to receive treatment, then he should be significantly better in less than six months.

The reviewing medical consultants with the State Agency found a depressive disorder with only mild limitations in terms of sustaining concentration, persistence or pace, yet limited the claimant to simple repetitive tasks (Ex 8F, 9F).

In his statements of record, the claimant reported that he was able to pay attention for up to two hours at a time; that he was able to finish things that he started; that he was able to follow written and spoken instructions; that he had no problems getting along with other people; and that he was able to handle changes in a routine pretty good (Ex 10E). The claimant's testimony reflects that he completed vocational training as an auto repair technician in 2002/2003. This type of training seemingly exceeds simple repetitive tasks. He also indicated that his inability to work was due to medical problems of an inability to bend, lift more than 10 pounds, or reach.

Thus, after considering the record, the undersigned concludes that the claimant's depression does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and therefore, is not severe.

The evidence reflects that the claimant has a history of heroine addiction until 2005, and that he is maintained on methadone. It is doubtful that his mental functioning would be very different even prior to his sobriety. Accordingly, with and without drug addiction considered in the assessment, in regard to the Part B criteria of Listings 12.04 and 12.09, the claimant has mild restriction in activities of daily living, mild difficulties in social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B" criteria findings into work-related functions in the residual functional capacity assessment below.

**4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

This finding is supported by the opinion of the medical expert who reviewed the records and considered this issue.

**5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work which permits lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours out of an eight hour day, and standing/walking for four hours out of an**

**12**

See Next Page

Robert A. Spadaro ███████                                          Page 5 of 9

**eight hour day except that he must be able to change position for five minutes every hour; occasional walking on uneven terrain; no climbing ladders/scaffolds; occasional climbing stairs, bending, stooping, kneeling, crouching and crawling; frequent balancing; and no working around hazardous machinery.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) describes the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

**13**

See Next Page

Robert A. Spadaro   Page 6 of 9

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

The claimant alleged that he was disabled and unable to work due to low back pain. As noted previously, the claimant had testified as to being unable to bend, reach or to lift more than 10 pounds.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and functionally limiting effects are not entirely credible or consistent with the record as a whole.

The medical evidence contains an MRI of the lumbar spine obtained in April 2002 which showed spondylolysis with spondylolisthesis at L5-S1, moderate right sided foraminal encroachment at L5-S1, and a 5 mm disc protrusion at the L4-5 level along with mild foraminal encroachment (Ex 3F pg 29). Physical examinations throughout the record were remarkable for tenderness, decreased range of motion in the spine and muscle spasm, but the claimant was without neurological deficits in terms of motor strength, sensation and reflexes (Ex 1F pg 40, 3F pg 46, 4F).

In connection with his workers compensation claim, the claimant had undergone an agreed medical examination with Dr. Robert Wood, an orthopedic surgeon, who gave a vague restriction against "substantial work" and more specifically, against prolonged standing (Ex 1F pg 17).

The record shows the claimant was treated by Dr. Ardeshir Rahmati beginning in April 2002 who placed the claimant on the status of temporary total disability pending treatment which according to his records, included medications and referral for a series of lumbar epidural injections (Ex 3F). The greater weight is given his opinion and assessment at the time of the permanent and stationary evaluation completed in July 2003 as to it is more specific in terms of functioning. At that time, the claimant was given restrictions against heavy lifting and from repetitive bending and stooping (Ex 1F pg 41).

Following a consultative orthopedic examination completed in January 2006, Kambiz Hannani, M.D., gave a light functional capacity with standing/walking for six hours out of an eight hour day (Ex 4F). A light functional capacity was also assessed by the reviewing medical consultant with the State Agency (Ex 6F).

After considering the record in its entirety, the Administrative Law Judge finds the functional capacity assessment for light work as set forth herein is appropriate. It incorporates the opinion of the medical expert, with support for that opinion found by way of Dr. Wood, Dr. Rahmati, Dr. Hannani, and the medical consultant with the State Agency.

The claimant has complained of back pain is which reasonable in view of his medically diagnosed back impairment. An overview of the record shows that his complaints have been responsive to conservative care with symptomatic improvement, per his statements to Dr. Rahmati (Ex 1F pg 39), and are addressed by restricting the claimant to light work with

**14**

Robert A. Spadaro  Page 7 of 9

restrictions against placing him at heights such as climbing ladders/scaffolds and from working around hazardous machinery. Although the claimant testified as to a lifting restriction of 10 pounds, elsewhere in the record he had inconsistently reported the ability to lift 25 and even up to 50 pounds (Ex 1F pg 10, 10E). Thus, a lifting restriction to 20 pounds is well within his reported capability, and as noted above, is consistent with that found by examining physicians. His allegations that bending repetitiously, and that stooping, squatting and prolonged sitting, standing and walking exacerbated his pain (Ex 1F pg 31, 6E) are acknowledged by limiting bending, stooping, and crouching to an occasional basis and allowing for a position change every hour for five minutes. In terms of his own assessment of functioning, the claimant has reported that he is able to sit for up to two hours at a time, walk for half a mile, and stand for half an hour and longer if he leans on something (Ex 6E). The claimant testified that he shops with his mother on Saturday and Sunday, and elsewhere in the record he had reported that he shops twice a week for about two hours (Ex 10E). The claimant has reported that he is able to walk one hour before having to sit (Ex 1F pg 10).Thus, the claimant's pain does not appear to prevent him from sitting, standing and/or walking for at least one hour at a time. The claimant has reported that his work injury was caused, or exacerbated by, driving over uneven asphalt. The inclusion of the restriction against more than occasional walking on uneven terrain is for prophylactic reasons.

In addition to the claimant's statements and testimony of record, the Administrative Law Judge has considered the lay evidence submitted by the claimant's daughter (Ex 9E) reporting in part, that the claimant was very limited in term of his activities, including with respect to bending and stooping, because of his back injury. Those particular allegations are supported by the medical opinion. However, to the extent that the claimant would have greater functional restrictions than as assessed herein, those statements conflict with the evidence as to the claimant's stated functional capabilities.

Thus, after having carefully considered the record in its entirety, the Administrative Law Judge finds no basis in the record for a more restrictive functional capacity.

**6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).**

The vocational evidence established that the claimant's past relevant work as a forklift operator, bottler and janitor exceed his residual functional capacity.

**7. The claimant was born on November 16, 1953 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**15**

See Next Page

Robert A. Spadaro ████████                                          Page 8 of 9

**10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as the light unskilled (SVP 2) jobs of (1) information clerk (Dictionary of Occupational Titles No. 237.367-018), with a 25% erosion numbering 1,500 jobs in the region and 1,800 jobs nationally; (2) cashier II (211.462-010), with a 50% erosion numbering 3,000 jobs in the region and 36,000 jobs nationally; and (3) assembler of small parts (706.684-022), with a 75% erosion numbering 4,200 jobs in the region and 46,000 in the national economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant was not under a disability as defined in the Social Security Act, at any time from March 25, 2002, the alleged onset date, through June 30, 2007, the date last insured (20 CFR 404.1520(g)).**

**16**

See Next Page

Robert A. Spadaro █████ Page 9 of 9

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on November 28, 2005, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through June 30, 2007, the date last insured.

/s/ *Helen E. Hesse*

Helen E. Hesse
Administrative Law Judge

January 15, 2009
Date